UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RALPH SPENCER,

                Plaintiff,

    -against-

GLOBAL INNOVATIVE GROUP, LLC,
Individually and doing business as Gigretail,
and AKMOL HUSSAIN,

                Defendants.

**MEMORANDUM
OPINION & ORDER**

17 Civ. 7604 (PGG) (BCM)

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiff Ralph Spencer alleges that his former employer – Global Innovative Group, LLC, d/b/a Gigretail (hereinafter "Global")[1] – and his former supervisor – Akmol Hussain – (collectively "Defendants") (1) subjected him to a hostile work environment; and (2) unlawfully retaliated against him.  (See generally Am. Cmplt. (Dkt. No. 23))  Defendants have moved to dismiss Plaintiff's hostile work environment claims pursuant to Fed. R. Civ. P. 12(b)(6).[2]  (Dkt. No. 26)

        On September 21, 2020, this Court referred Defendants' motion to Magistrate Judge Barbara C. Moses for a Report and Recommendation ("R&R").  (Dkt. No. 33)  On February 19, 2021, Judge Moses issued an R&R in which she recommends granting Defendants' motion.  (Dkt. No. 37)  On March 5, 2021, Plaintiff filed an objection to the R&R.  (Dkt. No. 38)  Defendants have not objected to the R&R and have not responded to Plaintiff's objection.  For

---

[1]  Plaintiff also refers to this defendant as Global Innovation Group, LLC.  (See, e.g., Am. Cmplt. (Dkt. No. 23) ¶ 8)
[2]  Defendants also moved to dismiss any disparate treatment claim.  (Def. Motion (Dkt. No. 26))  As discussed below, however, Plaintiff's claims are premised on two theories of liability:  hostile work environment and retaliation.  (See R&R (Dkt. No. 37) at 5, 6 n.5)

the reasons stated below, the Court will not adopt the R&R, and Defendants' motion to dismiss will be denied.

## BACKGROUND

I.   FACTS[3]

      Plaintiff "is an African-America[n], Black male." (Am. Cmplt. (Dkt. No. 23) ¶ 7) On June 1, 2016, Plaintiff began working at Global's Flatbush Avenue, Brooklyn store as the store manager. (Id. ¶¶ 12, 16-18) Hussain, who has an ownership interest in Global, was Plaintiff's supervisor. (Id. ¶¶ 13-15)

      On July 24, 2016 – during a heatwave – Plaintiff contacted Hussain after the store's air conditioning unit ("AC unit") began to malfunction. (Id. ¶ 20) Hussain offered a table fan as a temporary solution and said that the AC unit would be repaired. (Id. ¶ 21) On August 12, 2016, the AC unit "cease[d] to function." (Id. ¶ 22) Later that day, after Hussain informed Plaintiff that workers would repair the AC unit, ill-equipped carpenters arrived at the store. (Id. ¶¶ 23-24) On August 13, 2016, Hussain brought a seven-inch desktop fan to the store to address the heat problem. (Id. ¶ 25)

      On August 13, 2016, "[w]hile in the store," Hussain "took a personal phone call[,] [a]ware that Plaintiff [and another Black co-worker were] working within earshot." (Id. ¶ 26) During the call, Hussain "loudly and clearly" used the "n-word" "on more than five occasions." (Id. ¶¶ 26-27) Hussain left the store after the phone call. (Id. ¶ 28)

      On August 14, 2016, Plaintiff sent the following text message to Hussain: "'You and I need to have a serious conversation tomorrow, or whenever you're here next . . . [I]t's

---

[3] The facts set forth in this Order are drawn from the Amended Complaint and are presumed true for purposes of resolving Defendants' motion to dismiss. See Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007).

really not something to be talked about over the phone, but I will say that it has to do with your visit here yesterday.'"  (Id. ¶ 30)  Plaintiff also sent Hussain a text message about the AC unit. (Id. ¶ 31)

Hussain then called Plaintiff, who told Hussain that his repeated use of the "n-word" during the August 13, 2016 phone call had been deeply offensive.  (Id. ¶¶ 32-34)

In response, Hussain asked, "'[w]hy do you feel some kind of way about that?'" (Id. ¶ 34)  "Shocked by" Hussain's failure to apologize, Plaintiff ended the phone call.  (Id. ¶ 36)

Hussain then sent the following text message to Plaintiff:  "'So hanging up solves everything, i was off the clock not in uniform and having a casual convo with a friend and sorry u got offended in my convo which [had] nothing to do with you.'"  (Id. ¶ 37)  Plaintiff replied via text:  "'I'm leaving. Tanvir is closing.  I'll be here in the morning.  I have nothing else to say. Have a good one.'"  (Id. ¶ 38)  After this exchange, Hussain instructed "Plaintiff [to] take the next week off, advising [him], 'I will call you after we fix the AC' and 'I feel you need some rest.'"  (Id. ¶ 39)

Plaintiff claims that Hussain's instruction that Plaintiff take a week off was an "unlawful[] suspen[sion] [of his] employment."  (Id. ¶ 40; see id. ¶ 41 ("Plaintiff was suspended for expressing his reasonable opposition to the unlawful conduct and comments made by his Supervisor."))[4]

On August 20, 2016, Plaintiff went "to the store to pick up the keys in order to open the store the following morning," but he "was denied access to the keys and was told his next shift would be provided that evening."  (Id. ¶ 46)  That evening, Hussain called Plaintiff and

_____

[4]  On August 16, 2016, Plaintiff sent an email to T-Mobile USA, Inc.'s Chief Executive Officer complaining about a hostile work environment.  Plaintiff did not receive a response.  (Am. Cmplt. (Dkt. No. 23) ¶¶ 42-43)

told him that he could not return to work yet "due to 'research or an investigation' prompted by Defendants." (Id. ¶ 47)  Plaintiff then emailed "Defendants" "request[ing] an explanation as to why he was sent home from work. . . ." (Id. ¶ 48)

On August 23, 2016, Plaintiff sent another email to "Defendants" about the status of his return to work.  Plaintiff "asked if his suspension had been in response to 'addressing the temperatures in the store, and also addressing [Hussain's] use of the "N-word" in the store, in [his] presence.'" (Id. ¶ 49)  On August 24, 2016, Plaintiff was "wrongfully terminated" by Defendants.  (Id. ¶ 50)

The Amended Complaint pleads eleven causes of action.  Plaintiff asserts claims under (1) 42 U.S.C. § 1981 for hostile work environment and retaliation (First Cause of Action) (id. ¶¶ 59-62); (2) Title VII for race discrimination (Second Cause of Action) (id. ¶¶ 63-65) and for retaliation (Third Cause of Action) (id. ¶¶ 66-68); (3) the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 et seq., for race discrimination (Fourth, Fifth, and Six Causes of Action) (id. ¶¶ 69-78); and (4) the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107, for race discrimination (Seventh, Eighth, Ninth, Tenth, and Eleventh Causes of Action).  (Id. ¶¶ 79-94)

## II.   PROCEDURAL HISTORY

The Complaint was filed on October 4, 2017 (Cmplt. (Dkt. No. 1)), and the Amended Complaint was filed on January 30, 2018.[5] (Am. Cmplt. (Dkt. No. 23)) Defendants moved to dismiss Plaintiff's hostile work environment claims on February 26, 2018. (Dkt. No. 26)

On September 21, 2020, this Court referred Defendants' motion to Judge Moses for an R&R. (Dkt. No. 33) In a September 23, 2020 letter, Defendants submitted supplemental legal authority. (Sept. 23, 2020 Def. Ltr. (Dkt. No. 34) at 1)[6] On October 12, 2020, Plaintiff filed a reply letter. (Oct. 12, 2020 Ptlf. Ltr. (Dkt. No. 36))

On February 19, 2021, Judge Moses issued an R&R recommending that Defendants' motion to dismiss be granted. (R&R (Dkt. No. 37)) On March 5, 2021 Plaintiff filed an objection to the R&R. (Pltf. Obj. (Dkt. No. 38))

## III.   THE MAGISTRATE JUDGE'S REPORT & RECOMMENDATION

Judge Moses finds that while the Amended Complaint asserts eleven causes of action, all of Plaintiff's claims are premised on two theories of liability: (1) a hostile work environment stemming from Hussain's alleged use of a racial slur on August 13, 2016; and (2) retaliation in the form of Plaintiff's suspension and the later termination of his employment.[7] (R&R (Dkt. No. 37) at 5)

---

[5] The Complaint names Global, Hussain, and T-Mobile USA, Inc. as Defendants. (Cmplt. (Dkt. No. 1)) On January 30, 2018, pursuant to a stipulation of dismissal, all claims against T-Mobile USA, Inc. were dismissed. (Dkt. No. 22) That same day, Plaintiff filed the Amended Complaint against Global and Hussain. (Am. Cmplt. (Dkt. No. 23))

[6] All references to page numbers in this Order are as reflected in this District's Electronic Case Files ("ECF") system.

[7] Neither party has objected to the R&R's characterization of Plaintiff's claims, and the Court sees no clear error in this portion of Judge Moses's analysis.

As to the legal standards applicable under Title VII and the NYSHRL, Judge Moses states that a hostile work environment claim "'requires a showing (1) that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and (2) that a specific basis exists for imputing the objectionable conduct to the employer.'"  (Id. at 8 (quoting Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002) (internal quotation marks and citation omitted) and citing Summa v. Hofstra Univ., 708 F.3d 115, 123-24 (2d Cir. 2013) (Title VII and NYSHRL hostile work environment claims are evaluated under the same standard)))  "At the motion to dismiss stage, 'a plaintiff need only plead facts sufficient to support the conclusion that [he] was faced with harassment . . . of such quality or quantity that a reasonable employee would find the conditions of [his] employment altered for the worse.'"  (Id. (quoting (Cowan v. City of Mt. Vernon, 2017 WL 1169667, at *4 (S.D.N.Y. Mar. 28, 2017)))

Judge Moses further notes that "'[a] court faced with a challenge to a hostile work environment claim must assess the totality of the circumstances by considering a variety of factors, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  (Id. (quoting Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 102 (2d Cir. 2010)))

As to whether a hostile work environment claim can be predicated on a single act, Judge Moses finds that

> "it is well settled in this Circuit that even a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace." Alfano, 294 F.3d at 374 (citing Howley v. Town of Stratford, 217 F.3d 141, 154 (2d Cir. 2000) (vile and sexually explicit verbal abuse of a female firefighter that challenged her competence, was witnessed by a large group that included her subordinates, and created a justified fear that she would be left in peril at fire

6

scenes was sufficient) and <u>Richardson v. N.Y. State Dep't of Corr. Serv.</u>, 180
F.3d 426, 437 (2d Cir. 1999) (observing that a single sexual assault may be
sufficient to alter the terms and conditions of the victim's employment)).
However, absent a single incident of harassment that is "extraordinarily severe,"
<u>Alfano</u>, 294 F.3d at 374, "incidents must be more than episodic; they must be
sufficiently continuous and concerted in order to be deemed pervasive."
<u>Gorzynski</u>, 596 F.3d at 102 (quoting <u>Alfano</u>, 294 F.3d at 374); <u>see also, e.g.</u>,
<u>Gong v. City Univ. of New York</u>, --- F. App'x ---, 2021 WL 422451, at *2 (2d
Cir. Feb. 8, 2021) (summary order) (affirming district court's dismissal of
plaintiff's hostile work environment claims pursuant to Rule 12(b)(6) where the
alleged incidents "were too few, too separate in time, and too mild . . . to create an
abusive working environment"); <u>Aulicino v. New York City Dep't of Homeless
Servs.</u>, 580 F.3d 73, 83 (2d Cir. 2009) (quoting <u>Schwapp v. Town of Avon</u>, 118
F.3d 106, 110-11 (2d Cir. 1997)) ("For racist comments, slurs, and jokes to
constitute a hostile work environment . . . there must be more than a few isolated
incidents of racial enmity."). Crucially, "[h]ostile work environment claims are
meant to protect individuals from abuse and trauma that is severe" but are "not
intended to promote or enforce civility, gentility or even decency." <u>Isbell v. City
of New York</u>, 316 F. Supp. 3d 571, 591 (S.D.N.Y. 2018) (quoting <u>Bermudez v.
City of New York</u>, 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011)).

(<u>Id.</u> at 8-9)

       Judge Moses explains that under the NYCHRL

"[t]he standard for maintaining a hostile work environment claim is lower [than
under federal and state law]," [because the NYCHRL] was "intended to be more
protective than the state and federal counterpart." <u>Bermudez</u>, 783 F. Supp. 2d at
579 (quoting <u>Farrugia v. N. Shore Univ. Hosp.</u>, 820 N.Y.S.2d 718, 724 (N.Y.
Sup. Ct. 2006)). Thus, "even if the challenged conduct is not actionable under
federal and state law," a hostile work environment claim brought under the
NYCHRL requires "an independent analysis." <u>Mihalik v. Credit Agricole
Cheuvreux N. Am., Inc.</u>, 715 F.3d 102, 109 (2d Cir. 2013). Under local law –
unlike Title VII or the NYSHRL – the "severity and pervasiveness" of the
conduct is "relevant only to the issue of damages." <u>Mihalik</u>, 715 F.3d at 110. As
to liability, the plaintiff asserting a NYCHRL claim "need only show differential
treatment," that is, that she was treated "less well" than other employees due to
discriminatory intent. <u>Id.</u>

(<u>Id.</u> at 9-10)

       As to the instant case, Judge Moses says that it "present[s] the question whether a

single incident – in which a supervisor uses a vile racial slur in the presence of, but not addressed

to, an employee who is a member of the maligned racial group – is actionable under a hostile

work environment theory pursuant to Title VII and the NYSHRL." (Id. at 10)  While

acknowledging that the "Second Circuit has not decided this precise question," Judge Moses

discusses a number of Second Circuit and intra-Circuit district court cases that "shed light on the

issue." (Id.)

Judge Moses begins with Rivera v. Rochester Genesee Regional Transp. Auth.,

743 F.3d 11 (2d Cir. 2012), in which the Second Circuit remarks that "'[p]erhaps no single act

can more quickly alter the conditions of employment and create an abusive working environment

than the use of an unambiguously racial epithet such as "nigger" by a supervisor in the presence

of his subordinates.'" (Id. at 10-11 (quoting Rivera, 743 F.3d at 24 (quoting Richardson v. New

York State Dep't of Corr. Serv., 180 F.3d 426, 439 (2d Cir. 1999)) (quoting Rodgers v. W.-S.

Life Ins. Co., 12 F.3d 668, 675 (7th Cir. 1993)))  In that case, plaintiff was called the n-word at

last four times by his coworkers – who also physically threatened him on two occasions – and

once by his supervisor. (Id.)

In Albert-Roberts v. GGG Const., LLC, 542 F. App'x 62 (2d Cir. 2013), a

summary order, a co-worker called the plaintiff's husband the n-word. (Id. at 11)  The Second

Circuit affirmed the district court's grant of summary judgment in favor of the defendants,

concluding that "the plaintiff had not made out a prima facie case of a hostile work environment,

because her allegations do not rise to the level of frequency or severity necessary to established

such a claim." Albert-Roberts, 542 F. App'x at 64.  The Albert-Roberts court distinguishes La

Grande v. DeCrescente Distributing Co., 370 F. App'x 206 (2d Cir. 2010) in which "'allegations

of four instances of a company manager calling the plaintiff a "nigger," coupled with threats of

physical violence and other racial slurs . . . were sufficient to survive a motion to dismiss.'"

(R&R (Dkt. No. 37) at 11-12 (quoting La Grande, 370 F. App'x at 210))

Daniel v. T&M Prot. Res., LLC, 689 F. App'x 1 (2d Cir. 2017), another summary order, involves several racially and sexually discriminatory incidents culminating in a supervisor calling the plaintiff a "fucking nigger." Daniel, 689 F. App'x at 2. The Second Circuit vacated the district court's grant of summary judgment and remanded the case for further proceedings. Id. at 2-3. Judge Moses notes that in Daniel the Second Circuit declined to decide whether a supervisor's one-time use of the "n-word" in speaking to a subordinate could, "'by itself, support a claim for a hostile work environment.'" (R&R (Dkt. No. 37) at 11-12 (quoting Daniel, 689 F. App'x at 2)) The Second Circuit found, however, that the district court erred in ruling as a matter of law that the one-time of use of this racial slur could never create a hostile work environment. (Id.) Moreover, the Daniel court reiterated that "'perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as "nigger" by a supervisor in the presence of his subordinates.'" (Id. (quoting Daniel, 689 F. App'x at 2) (emphasis in Daniel))

Judge Moses finds that the instant case is distinguishable from Daniel, because "Plaintiff's supervisor did not direct the slur to [P]laintiff, or to anyone else in the workplace. Nor is there any suggestion in the Amended Complaint that the supervisor was referring to [P]laintiff or his coworkers during his conversation." (Id. at 13-14) She also notes that Plaintiff has not alleged "any other incidents that 'bolster' the racial harassment claim," and that Plaintiff has not cited any case "from this District or elsewhere in our Circuit, in which a hostile work environment claim survived a motion to dismiss based on a single [use of the n-word]." (Id. at 13)

Judge Moses also considers four cases in which district courts rejected hostile work environment claims premised on a coworker or supervisor's use of the n-word: Love v.

9

Premier Util. Servs., LLC, 186 F. Supp. 3d 248, 253 (E.D.N.Y. 2016); Philip v. GTECH Corp.,
2016 WL 3959729 (S.D.N.Y. July 20, 2016); Johnson v. City of New York, 2019 WL 4468442
(E.D.N.Y. Sept. 18, 2019); and Blue v. City of Hartford, 2019 WL 7882565 (D. Conn. Oct. 22,
2019).  (See R&R (Dkt. No. 37) at 14-17)

   In Love, the court dismissed the hostile work environment claims of two Black
plaintiffs premised on "only one discriminatory remark."  Love, 186 F. Supp. 3d at 255.  Both
plaintiffs "overheard" a manager use the n-word; the racial slur was not directed at either
plaintiff.  Id. at 251 ("Dunham overheard [his supervisor] remark to two other supervisors 'don't
worry about those stupid niggers, they're going to fail this [training] course.  We don't need any
niggers out here on [Long] Island representing Premier.' . . . Nelson was in a bathroom stall
during a break period and 'overheard [the same supervisor] remark to another supervisor that
none of the niggers in the training program will end up representing the company.'").  Relying
on Alfano and Albert-Roberts, the Love court noted that "a single instance of allegedly
discriminatory conduct, unless extraordinarily severe, generally cannot sustain a claim based on
a hostile work environment," and that "the facts alleged" in that case did not "satisfy [that]
exacting standard."  Id.

   Judge Moses notes that the claim dismissed in Love was more serious than the
allegations here, because in Love plaintiffs "overheard a supervisor speaking with other
supervisors about employees . . . [whereas here, Plaintiff merely] overheard a supervisor
speaking with a third-party about matters unrelated to work."  (R&R (Dkt. No. 37 at 14-15)
(emphasis in original)

   In Philip, a Black plaintiff heard his supervisor call a Black coworker a "lazy
nigger," and was told about other instances in which this same supervisor had used the same

racial slur.  Philip, 2016 WL 3959729, at *7.  The court granted Defendants summary judgment,

finding that "such isolated, sporadic, and de-personalized epithets are not 'severe or pervasive

enough to create an objectively hostile or abusive work environment.'"  Id. at *24 (quoting

Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).  Judge Moses found the conduct alleged in

Philip "more severe than what is alleged in [the instant] case," because Hussain used the n-word

in conversation with a third party and did not direct it at either of his Black subordinates.  (R&R

(Dkt. No. 37) at 15)

       Johnson v. City of New York, 2019 WL 4468442 (E.D.N.Y. Sept. 18, 2019) and

Blue v. City of Hartford, 2019 WL 7882565 (D. Conn. Oct. 22, 2019) involve single use of the

n-word by a co-worker at work.  In dismissing a hostile work environment claim in Johnson, the

court noted that the only "overtly racial incident that [plaintiff] alleges [over a 21-year career] is

a comment made by his co-worker [that plaintiff was a] . . . 'sorry-ass Nigger.'"  Johnson, 2019

WL 4468442, at *7.  In Blue, a co-worker called the plaintiff a "clown ass nigger" in a work

meeting.  Blue, 2019 WL 7882565, at *1.  The court dismissed Plaintiff's hostile work

environment claim, concluding that "[p]laintiff's allegations do not add up to a sufficiently

'severe or pervasive' work environment for purposes of a Title VII claim."  Id. at *6.  Judge

Moses again concludes that the allegations here are less severe than the allegations in Johnson

and Blue, because in those cases "the plaintiffs were actually called a racial epithet while at work

– albeit by a coworker, not a supervisor."  (R&R (Dkt. No. 37) at 15-16)

       Having reviewed the Second Circuit and district court authority discussed above,

Judge Moses finds that Plaintiff

> relies on a single alleged conversation that was overheard by Spencer but neither
> addressed to him nor about him.  . . . [A]lthough Hussain's conduct, as alleged,
> was odious, [P]laintiff's allegations "do not rise to the level of frequency or

severity necessary to establish[]" a hostile work environment claim under federal
or New York law.  Albert-Roberts, 542 F. App'x at 64.

(R&R (Dkt. No. 37) at 17)

As to Plaintiff's hostile work environment claim under the NYCHRL, Judge

Moses acknowledges that "'[t]he standard for maintaining a hostile work environment claim is

lower under the NYCHRL'" than under state and federal law (id. at 9 (quoting Bermudez, 783 F.

Supp. 2d at 579)), but concludes that,

> [f]or similar reasons, [P]laintiff cannot sustain a race-based discrimination claim
> under the NYCHRL on a hostile work environment theory. . . . [P]laintiff still
> must allege that he was treated "less well" than other employees because of a
> protected characteristic.  See Mihalik, 715 F.3d at 110; Gonzalez, 377 F. Supp. 3d
> at 302 (granting motion to dismiss where plaintiff failed "to allege facts . . . that
> support the inference that he was treated less well because of his protected
> characteristics"). . . . Here, [] there is not a single allegation – not even a
> conclusory one – suggesting that plaintiff was treated "less well" because of his
> race.  Nor does plaintiff urge the point in his opposition brief.  As noted above,
> plaintiff's core allegation is that he overheard his supervisor use the "n-word"
> during a personal conversation, with a third party, conducted in the workplace.
> Am. Compl. ¶¶ 26-27, 33.  Standing alone – as it does – this allegation does not
> suggest that plaintiff was treated "less well" than any of his coworkers. . . . Thus,
> even under the more liberal NYCHRL standard, I conclude that the allegations are
> insufficient to support a hostile work environment claim.

(Id. at 17-18)

Finally, Judge Moses recommends denying leave to amend, because Plaintiff did

not seek leave and has already amended once.  (Id. at 18-19 ("[A]nd even without his hostile

work environment claims, his case will proceed on a retaliation theory. Consequently, there is no

reason for the Court to exercise its discretion to grant plaintiff another opportunity to plead

claims sounding in a hostile work environment."))

## IV.     **PLAINTIFF'S OBJECTION**

On March 5, 2021, Plaintiff filed an objection to the R&R, in which he argues that

Judge Moses "erroneously applies the law []by unreasonably narrowing the applicability of the

single incident doctrine to a racially hostile work environment." (Pltf. Obj. (Dkt. No. 38) at 8-9)

According to Plaintiff, <u>Love</u> and <u>Philip</u> are not analogous, because in those cases plaintiffs

merely overhear their supervisor use the n-word. (Pltf. Obj. (Dkt. No. 38) at 8-9) Here, Plaintiff

argues, "Hussain made the decision to loudly use the word nigger in the small confines of the

store front, all while fully aware that his [Black] employees were present." (<u>Id.</u>)

Defendants did not object to the R&R and have not responded to Plaintiff's

objection.

## DISCUSSION

## I.     LEGAL STANDARDS

### A.     Review of Report and Recommendation

A district court reviewing a magistrate judge's report and recommendation "may

accept, reject, or modify, in whole or in part, the findings or recommendations made by the

magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a timely objection has been made to a

magistrate judge's recommendation, the district court judge "shall make a <u>de novo</u> determination

of those portions of the report or specified proposed findings or recommendations to which

objection is made." <u>Id.</u> However, "[o]bjections that are merely perfunctory responses argued in

an attempt to engage the district court in a rehashing of the same arguments set forth in the

original papers will not suffice to invoke <u>de novo</u> review.'" <u>Phillips v. Reed Grp., Ltd.,</u> 955 F.

Supp. 2d 201, 211 (S.D.N.Y. 2013) (citation, quotation marks, and alteration marks omitted).

"To the extent . . . that the party . . . simply reiterates the original arguments, [courts] will review

the [R&R] strictly for clear error." <u>Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.,</u> 07

Civ. 6865 (LTS), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008). For portions of the R&R to

which no timely objection is made, a Court's review is limited to a consideration of whether

there is any "'clear error on the face of the record'" that precludes acceptance of the recommendations. Wingate v. Bloomberg, 2011 WL 5106009, at *1 (S.D.N.Y. Oct. 27, 2011) (quoting Fed. R. Civ. P. 72(b) advisory committee note; citing Nelson v. Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)).

**B.**   **Motion to Dismiss**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," and must "draw all reasonable inferences in favor of the plaintiff." Kassner, 496 F.3d at 237 (2d Cir. 2007).

"[A] plaintiff alleging employment discrimination or retaliation is not required to plead facts sufficient to establish a prima facie case," however. Krasner v. HSH Nordbank AG, 680 F. Supp. 2d 502, 512 (S.D.N.Y. 2010). Instead, "the 'ordinary rules for assessing the sufficiency of a complaint' under Federal Rule of Civil Procedure 8(a)'s notice pleading standard appl[y]." Id. (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002)). Under this standard, a plaintiff is required only to set forth a "short and plain statement of the claim," Fed. R. Civ. P. 8(a), with sufficient factual "heft 'to sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)). To survive a motion to dismiss, plaintiff's "[f]actual allegations must be enough to raise a right of relief above the speculative level," id. at 555, and plaintiff's claims must be "plausible on [their] face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

"Where a complaint pleads facts that are 'merely consistent with' a defendant's

liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'"

Id. (quoting Twombly, 550 U.S. at 557).   Moreover, where "the allegations in a complaint,

however true, could not raise a claim of entitlement to relief," Twombly, 550 U.S. at 558, or

where a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the[]

complaint must be dismissed."  Id. at 570.   "Nor does a complaint suffice if it tenders 'naked

assertion[s]' devoid of 'further factual enhancement.'"  Iqbal, 556 U.S. at 678

(quoting Twombly, 550 U.S. at 557).

## II.   ANALYSIS

### A.   Applicable Law

The standard applicable to Plaintiff's hostile work environment claim is the same

under Title VII, Section 1981 and the NYSHRL.[8]  Rivera, 743 F.3d at 20 n.4.  To state a hostile

work environment claim

> a plaintiff must plead facts that would tend to show that the complained of conduct:  (1)
> is objectively severe or pervasive – that is, creates an environment that a reasonable

---

[8]  In August 2019, the NYSHRL was amended to provide that it "shall be construed liberally for
the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights
laws, including those laws with provisions worded comparably to the provisions of [the
NYSHRL], have been so construed."  N.Y. Exec. Law § 300.  Accordingly, for claims that
accrued after this amendment went into effect, see S. 6577, 242d Leg. § 16(d) (N.Y. 2019), "'the
standard for [NYSHRL discrimination] claims [is] closer to the standard of the
NYCHRL.'"  Edelman v. NYU Langone Health Sys., 2022 WL 4537972, at *14 (S.D.N.Y. Sept.
28, 2022) (second alteration in original) (quoting Livingston v. City of New York, 563 F. Supp.
3d 201, 232 n.14 (S.D.N.Y. 2021)).

This amendment does not affect Plaintiff's NYSHRL claims, because those claims accrued in
2016.  (See Am. Cmplt. (Dkt. No. 23))  "'[A] cause of action for discrimination under
the NYSHRL accrues and the limitation period begins to run on the date of the alleged
discriminatory act.'"  Syeed v. Bloomberg L.P., 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021)
(alteration in original) (quoting Fair Hous. Just. Ctr., Inc. v. JDS Dev. LLC, 443 F. Supp. 3d 494,
504 (S.D.N.Y. 2020)).  Courts have concluded that the effective date of N.Y. Exec. Law § 300 is
either August 12, 2019 (the signing date) or October 11, 2019 (the date other parts of the

person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected characteristic].

Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks, citations, and alterations omitted).  Thus, a "plaintiff must show that the conduct at issue is 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and 'the victim must also subjectively perceive that environment to be abusive.'"  Romero v. DHL Express, Inc., 2015 WL 1315191, at *5 (S.D.N.Y. Mar. 24, 2015) (quoting Feingold v. New York, 366 F.3d 138, 150 (2d Cir. 2004)).  In determining whether the alleged conduct states a hostile work environment claim, courts consider "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with [the] employee's work performance.'"  Feingold, 366 F.3d at 150 (quoting Harris, 510 U.S. at 23).

"While Plaintiffs face a 'high hurdle with respect to the level and frequency of offensive conduct that must be present' to prove their hostile work environment claims, . . . 'to avoid dismissal under [Fed. R. Civ. P.] 12(b) (6), a plaintiff need only plead facts sufficient to support the conclusion that [he] was faced with harassment . . . of such quality or quantity that a reasonable employee would find the conditions of [his] employment altered for the worse.'"

_____

omnibus bill containing the amendment take effect).  Compare McHenry v. Fox News Network, LLC, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020) (citing S. 6577, 242d Leg. § 16 (N.Y. 2019)) ("The amendment took effect on the signing date, August 12, 2019, although other parts of the omnibus bill containing it took effect on October 11, 2019.") and Edelman, 2022 WL 4537972, at *14 (stating that the "effective date of" N.Y. Exec. Law § 300 is "August 12, 2019"), with Livingston, 563 F. Supp. 3d at 232 n.14 (citing Wellner v. Montefiore Med. Ctr., 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019)) ("These amendments were signed into law by then-Governor Andrew Cuomo on or about August 12, 2019.  Significantly, however, these amendments only apply to claims that accrue on or after the effective date of October 11, 2019.").  Accordingly, Plaintiff's hostile work environment and retaliation claims accrued before the amendments to the NYSHRL, and his Title VII, Section 1981, and NYSHRL claims are all subject to the same standard.

Ruiz v. City of New York, 2015 WL 5146629, at *8 (S.D.N.Y. Sept. 2, 2015) (quoting first

DelaPaz v. N.Y.C. Police Dep't, 2003 WL 21878780, at *3 (S.D.N.Y. Aug. 8, 2003) and then

Patane, 508 F.3d at 113).  The Second Circuit has "repeatedly cautioned against setting the bar

too high" at the motion to dismiss stage.  Patane, 508 F.3d at 113 (quotation marks omitted).

        "[A] 'hostile work environment' for purposes of the NYCHRL is one where there

is 'differential treatment' period.  In other words, all that is required to sustain a NYCHRL

'hostile work environment claim' is 'unequal treatment' based upon membership in a protected

class." Fattoruso v. Hilton Grand Vacations Co., 873 F. Supp. 2d 569, 578 (S.D.N.Y. 2012)

(emphasis omitted) (citing Williams v. New York City Hous. Auth., 61 A.D.3d 62, 77 (1st Dept.

2009)); see also Nieblas-Love v. New York City Hous. Auth., 165 F. Supp. 3d 51, 68 (S.D.N.Y.

2016) (dismissing NYCHRL claim where plaintiff "offer[ed] nothing but bare speculation to link

[differential treatment] to any discriminatory (or retaliatory) motive or intent").  Courts should

"only dismiss [a NYCHRL hostile work environment] claim if [they] determine that [it] is a

'truly insubstantial case' in which defendant's behavior cannot be said to fall within the 'broad

range of conduct that falls between "severe and pervasive" on the one hand and a "petty slight or

trivial inconvenience" on the other.'" Hernandez v. Kaisman, 103 A.D.3d 106, 114-15 (1st

Dept. 2012) (quoting Williams, 61 A.D.3d at 80).  Therefore, "[i]f a race discrimination, hostile

work environment, or retaliation claim is adequately pled under Title VII, it is likewise

adequately pled under . . . the NYCHRL." Oliver v. City of New York, 2023 WL 2160062, at

*19 (S.D.N.Y. Feb. 22, 2023); Mihalik, 715 F.3d at 109 (the NYCHRL "created a 'one-way

ratchet,' by which interpretations of state and federal civil rights statutes can serve only '"as a

floor below which the City's Human Rights law cannot fall"'") (quoting Loeffler v. Staten Island

Univ. Hosp., 582 F.3d 268, 278 (2d Cir. 2009)) (quoting in turn N.Y.C. Local L. No. 85 of 2005 § 1).

### B.      Whether the Amended Complaint States a Hostile Work Environment Claim

Plaintiff claims that while he and a black coworker were at work and "within earshot," Defendant Hussain "loudly and clearly" used the n-word "on more than five occasions." (Am. Cmplt. (Dkt. No. 23) ¶ 26)  Hussain did not direct the racial slur at Plaintiff or his coworker.  He instead used the term in a "personal phone call." (Id.)  Plaintiff pleads that Hussain was aware that Plaintiff and his coworker were within earshot, however. (Id.; see also R&R (Dkt. No. 37) at 10)  In sum, it is clear from the Amended Complaint's allegations that the racial slur was not directed at Plaintiff, his co-worker, or a customer of the store, and that Hussain's alleged use of the racial slur was entirely unrelated to the business being conducted at the store.

Because the Amended Complaint alleges no other conduct that contributed to a hostile work environment, the issue presented by Defendants' motion to dismiss is whether Hussain's mere use of the racial slur in the workplace – while speaking with a friend or associate about a personal matter – can constitute "sufficiently severe" conduct so as to state a hostile work environment claim.  See Banks v. Gen. Motors, LLC, 81 F. 4th 242, 2023 WL 5761361, at *10 (2d Cir. Sept. 7, 2023) ("A plaintiff must show that 'either a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment.'") (quoting Alfano, 294 F.3d at 374).

As an initial matter, and as Judge Moses acknowledges, the Second Circuit has "not decided [the] precise question" presented by this case. (R&R (Dkt. No. 37) at 10)  This Court's concludes that Rivera and Banks – and a long history of earlier precedential opinions

from the Second Circuit – counsel against dismissing Plaintiff's hostile work environment claim at this stage of the litigation.

In <u>Rivera</u>, <u>Banks</u>, <u>Daniel</u>, and <u>Richardson</u>, the Second Circuit recognized that use of the n-word in the workplace by a supervisor has the potential to be transformative.  In words that apply with force here, the <u>Rivera</u> court stated that "[p]erhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as 'nigger' by a supervisor in the presence of his subordinates."  <u>Rivera</u>, 743 F.3d at 24 (quoting <u>Richardson</u>, 180 F.3d at 439) (quoting <u>Rodgers</u>, 12 F.3d at 675) (quotation marks omitted).

And in <u>Banks</u>, the Second Circuit repeated that

> "perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as 'n****r.'"  The epithet has been "described as a term that sums up . . . all the bitter years of insult and struggle in America, a pure anathema to African-Americans, and probably the most offensive word in English."

<u>Banks</u>, 2023 WL 5761361, at *10 (quoting first <u>Rivera</u>, 743 F.3d at 24 and second <u>Woods v. Cantrell</u>, 29 F.4th 284, 285 (5th Cir. 2022)) (citations omitted).  And the <u>Banks</u> court also reminded lower courts that "'conduct not directly targeted at or spoken to an individual but purposefully taking place in [his] presence can nevertheless transform [his] work environment into a hostile or abusive one.'"  <u>Id.</u> (quoting <u>Rasmy v. Marriott International, Inc.</u>, 952 F.3d 379, 389 (2d Cir. 2020).

It is also worth noting that each of the Second Circuit hostile work environment cases discussed above arose in the context of summary judgment, and on the basis of a full factual record.  <u>See</u> <u>Banks</u>, 2023 WL 5761361 (reversing grant of summary judgment to defendants on hostile work environment claim); <u>Rivera</u>, 743 F.3d 11 (same); <u>Daniel</u>, 690 F. App'x 1 (same); <u>Richardson</u>, 180 F.3d 426 (same).

Acknowledging the "'high hurdle with respect to the level and frequency of offensive conduct that must be present' to prevail on [a] hostile work environment claim[]," Ruiz, 2015 WL 5146629, at *8 (quoting DelaPaz, 2003 WL 21878780 at *3), this Court – applying de novo review – finds dismissal at this time improper.  Banks, Rivera, and a long line of other precedents teach that (1) a single incident can create a hostile work environment if it is "extraordinarily severe"; and (2) the n-word is the most "severe" slur in the English language. Given these circumstances and the conduct alleged here – repeated use of the n-word by a supervisor in the presence of his African-American subordinates in a tone of voice calculated to be heard – dismissal is premature.

Out-of-circuit law likewise confirms that dismissal at this stage of the litigation is premature.  In Castleberry v. STI Grp., the Third Circuit began by noting that the "severe or pervasive" standard applies to hostile work environment claims.  Castleberry, 863 F.3d 259, 264 (3d Cir. 2017) (emphasis in original); id. ("the distinction 'means that "severity" and "pervasiveness" are alternative possibilities'") (quoting Jensen v. Potter, 435 F.3d 444, 449 (3d Cir. 2006)).  The court then considered plaintiffs' claim that "a supervisor told [one plaintiff, a Black construction worker,] and his [non-Black] coworkers that if they had 'nigger-rigged' [a] fence, they would be fired."  Id. at 262.  "Plaintiffs reported the offensive language to a superior and were fired two weeks later without explanation."  Id.  The district court granted defendants' motion to dismiss.  Id.  On appeal, the parties disputed whether," [u]nder the correct 'severe or pervasive' standard, . . . the supervisor's single use of the 'n-word' is adequately 'severe' and if one isolated incident is sufficient to state a claim under that standard."  Id. at 264.  The Third Circuit held that "[a]lthough the resolution of that question is context-specific, it is clear that one such instance [of a supervisor's use of the n-word] can suffice to state a claim."  Id.  In reversing

the dismissal order, the court noted that the "[p]laintiffs alleged that their supervisor used a racially charged slur in front of them and their non-African-American coworkers. Within the same breath, the use of this word was accompanied by threats of termination (which ultimately occurred). This constitutes severe conduct that could create a hostile work environment." Id. In reversing, the Third Circuit also commented that, "most importantly, what Defendants and the District Court ignore is that in every case they cite the claim was resolved at summary judgment." Id. at 266.

Other courts have reached the same result on similar facts. See Smelter v. S. Home Care Servs. Inc., 904 F.3d 1276, 1286 (11th Cir. 2018) ("[Defendant] argues that [the plaintiff's supervisor's] 'one-time use' of [the n-word] was insufficient to establish severity as a matter of law. We strongly disagree.") (citation omitted); Ayissi-Etoh v. Fannie Mae, 712 F.3d 572, 577 (D.C. Cir. 2013) (reversing grant of summary judgment where a supervisor called the plaintiff the n-word and noting that, as to the use of the n-word, "[t]his single incident might well have been sufficient to establish a hostile work environment."); Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 280 (4th Cir. 2015) ("[A] reasonable jury could find that [the defendant's] two uses of the 'porch monkey' epithet – whether viewed as a single incident or as a pair of discrete instances of harassment – were severe enough to engender a hostile work environment.").

In recommending that this Court dismiss Plaintiff's hostile work environment claims, Judge Moses did not apply the Patane test applicable at the motion to dismiss stage. Instead, the R&R and Defendants rely principally on cases decided either at summary judgment, or after trial. (R&R (Dkt. No. 37) at 8-17 (citing Alfano, 294 F.3d at 369 ("We conclude that the evidence at trial was insufficient as a matter of law to establish a hostile work environment under

Title VII."); <u>Rivera</u>, 743 F.3d at 16 (summary judgment); <u>Daniel</u> 689 F. App'x at 2 (same);

<u>Schwapp v. Town of Avon</u>, 118 F.3d 106, 109 (2d Cir. 1997) (same)); <u>see</u> Def. Br. (Dkt. No. 28)

(citing, <u>e.g.</u>, <u>Albert-Roberts</u>, 542 F. App'x at 63 (summary judgment); <u>Raspardo v. Carlone</u>, 770

F.3d 97, 102 (2d Cir. 2014) (same); <u>Orlando v. Dep't of Transp., Comm'r</u>, 459 F. App'x 8, 9 (2d

Cir. 2012) (same); <u>Duarte v. St. Barnabas Hosp.</u>, 265 F. Supp. 3d 325, 346 (S.D.N.Y. 2017)

(same) <u>Philip v. Gtech Corp.</u>, 2016 WL 3959729, at *1 (S.D.N.Y. July 20, 2016) (same); <u>Lewis</u>

<u>v. State of Connecticut Dep't of Corr.</u>, 355 F. Supp. 2d 607, 611 (D. Conn. 2005) (same)))

       As discussed above, for a Federal or NYSHRL hostile work environment claim to

survive a motion to dismiss, "a plaintiff need only plead facts sufficient to support the conclusion

that []he was faced with 'harassment . . . of such quality or quantity that a reasonable employee

would find the conditions of h[is] employment altered for the worse." <u>Patane</u>, 508 F.3d at 113

(citation and quotation marks omitted).  And in the context of a motion to dismiss, the Second

Circuit has "repeatedly cautioned against setting the bar too high." <u>Id.</u> (citation and quotation

marks omitted); <u>Kassner</u>, 496 F.3d at 241 ("At the pleading stage of the case, however, plaintiffs

need not plead a <u>prima facie</u> case . . . so long as they provide in the complaint a short and plain

statement of the claim that shows that plaintiffs are entitled to relief and that gives the defendant

fair notice of plaintiffs' claim for hostile work environment and the grounds upon which that

claim rests.").

       As to the three district court cases cited in the R&R in which hostile work

environment claims were dismissed – <u>Love v. Premier Util. Servs., LLC</u>, 186 F. Supp. 3d 248,

253 (E.D.N.Y. 2016); <u>Johnson v. City of New York</u>, 2019 WL 4468442 (E.D.N.Y. Sept. 18,

2019); and <u>Blue v. City of Hartford</u>, 2019 WL 7882565 (D. Conn. Oct. 22, 2019) (<u>See</u> R&R

(Dkt. No. 37) at 14-17; Def. Sept. 23, 2020 Ltr. (Dkt. No. 34)) – they do not demonstrate that dismissal is appropriate here.

The Love court – in granting dismissal – emphasized that plaintiffs merely "overheard" their manager use the n-word. Love, 186 F. Supp. 3d at 251 ("Dunham overheard [his supervisor] remark to two other supervisors 'don't worry about those stupid niggers, they're going to fail this [training] course. We don't need any niggers out here on [Long] Island representing Premier.' . . . Nelson was in a bathroom stall during a break period and 'overheard [the same supervisor] remark to another supervisor that "none of the niggers in the training program will end up representing the company.""""). Here, by contrast, Plaintiff alleges that Hussain used the n-word five times while on a phone call in front of Plaintiff and a Black co-worker. (Am. Cmplt. (Dkt. No. 23) ¶ 26; Pltf. Obj. (Dkt. No. 38) at 8-9) The Amended Complaint further alleges that Hussain was "[a]ware" that the two Black employees were "working within earshot" and could hear him when he repeatedly used the racial slur. (Am. Cmplt. (Dkt. No. 23) ¶ 26)[9]

Johnson and Blue involve a co-worker's use of the n-word, rather than a supervisor's use of this racial slur. The magistrate judge dismissed this distinction as "not compelling," noting that in Johnson and Blue "the 'n-word' was hurled directly _at_ the plaintiff, unlike the circumstance[s here]." (R&R (Dkt. No. 37) at 16 n.8 (emphasis in original)) The Second Circuit has, however, placed special emphasis on a supervisor's use of the n-word in

---

[9] Moreover, in granting the motion to dismiss, Love relies on cases decided at summary judgment or after trial. Love, 186 F. Supp. 3d at 255-56 (citing Alfano, 294 F.3d at 373-74; Lewis, 355 F.Supp.2d at 622; and Albert-Roberts, 542 Fed. App'x. 62). As discussed above, different standards apply on a motion to dismiss and at summary judgment or after trial, and the existence of a full record is important in determining whether granting judgment as a matter of law is appropriate.

creating a hostile work environment.  See Rivera, 743 F.3d at 24 ("We emphasize that '[p]erhaps

no single act can more quickly alter the conditions of employment and create an abusive working

environment than the use of an unambiguously racial epithet such as 'nigger' by a supervisor in

the presence of his subordinates.'") (quoting Richardson, 180 F.3d at 439) (emphasis added).

And as the Supreme Court has recognized, "acts of supervisors have greater power to alter the

environment than acts of coemployees generally."  Faragher v. City of Boca Raton, 524 U.S.

775, 805 (1998).  Accordingly, a supervisor's use of the n-word has a far greater impact on an

employee's work environment than a co-worker's use of that slur.  See Rodgers, 12 F.3d at 675

("The fact that black employees also may have spoken the term 'nigger' does not mitigate the

harm caused by Mann's use of that epithet; a supervisor's use of the term impacts the work

environment far more severely than use by co-equals.").  In sum, Johnson and Blue are not

persuasive here.

   Drawing all inferences in Plaintiff's favor – as the Court must at this stage of the

litigation, Kassner, 496 F.3d at 238 – the Court concludes that Plaintiff has – for purposes of his

Title VII, Section 1981, and NYSHRL hostile work environment claims – pled "facts sufficient

to support the conclusion that []he was faced with harassment . . . of such quality or quantity that

a reasonable employee would find the conditions of h[is] employment altered for the worse."

Patane, 508 F.3d at 113.  "[W]hether a particular work environment is objectively hostile is

necessarily a fact-intensive inquiry, . . . [and here] Plaintiff has alleged sufficient facts to be

'entitled to offer evidence to support [his] claim[].'"  Id. at 114 (quoting Scheuer v. Rhodes, 416

U.S. 232, 236 (1974)).[10]

---

[10]  As to the second and third prongs of the Patane test, Defendants have not argued that the
Amended Complaint fails to allege that (1) Plaintiff subjectively perceived the work environment

As to Plaintiff's NYCHRL hostile work environment claim, if such a "claim is adequately pled under Title VII, it is likewise adequately pled under . . . the NYCHRL." Oliver, 2023 WL 2160062, at *19. Accordingly, Defendants' motion to dismiss Plaintiff's NYCHRL hostile work environment claim will be denied. See id.; Clarke v. New York City Dep't of Educ., 2020 WL 6047426, at *8 (E.D.N.Y. Oct. 13, 2020) ("Likewise, Ms. Clarke's claims of discrimination under NYSHRL, which is coextensive with Title VII, and NYCHRL, which is less stringent than Title VII, must advance to trial."); Mihalik, 715 F.3d at 109 (stating that the NYCHRL "created a 'one-way ratchet,' by which interpretations of state and federal civil rights statutes can serve only '"as a floor below which the City's Human Rights law cannot fall"'") (quoting Loeffler, 582 F.3d at 278) (in turn quoting N.Y.C. Local L. No. 85 of 2005 § 1).

## CONCLUSION

For the reasons stated above, the Court does not adopt Judge Moses's R&R (Dkt. No. 37), and Defendants' motion to dismiss Plaintiff's hostile work environment claims (Dkt. No. 26) is denied. The Clerk of Court is directed to terminate the motion.

The Court will conduct a case management conference on **October 26, 2023, at 9:30 a.m.**, in Courtroom 705, U.S. Courthouse, 40 Foley Square, New York, New York. The

---

as hostile or abusive following Hussain's use of the n-word; or (2) the conduct created a hostile environment "because of [] [P]laintiff's [race]." Id. at 113.

parties will submit a joint letter and proposed case management plan in accordance with the

Court's individual rules one week in advance of the case management conference.

Dated: New York, New York
          October 12, 2023

                                        SO ORDERED.

                                        _Paul A. Gardephe_

                                        Paul G. Gardephe
                                        United States District Judge